UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Joseph Robert Gilliam,

    Plaintiff,    Court File No. 19-cv-2749 (NEB/LIB)

v.    **REPORT AND RECOMMENDATION**

Robin Roach, et al.,

    Defendants.

   This matter comes before the undersigned United States Magistrate Judge upon Defendants Robin Roatch,[1] Michael Engel, Nickolas Eberheart, and Ryan Manley's Motion to Dismiss, [Docket No. 6], and Defendants Troy Griffith and Jesse Kenow's Motion to Dismiss, [Docket No. 15]. Defendants' Motions were referred to the undersigned by the Honorable Nancy E. Brasel. (Order [Docket No. 5]). Following a Motions Hearing, the matter was taken under advisement. (Minute Entry [Docket No. 27]).

   For the reasons setout below, the Court recommends that Defendants' Motions to Dismiss, [Docket Nos. 6, 15], be **GRANTED**.

**I.  BACKROUND AND STATEMENT OF ALLEGED FACTS[2]**

   Plaintiff, Joseph Gilliam, is employed as a security officer by Grand Casino located in Hinckley, Minnesota ("Grand Casino"). (Compl. Suppl. [Docket No. 1-1], at 1). Plaintiff's residence is located less than a mile from Grand Casino at XXX Fire Monument Road, Hinckley, Minnesota. (Compl. [Docket No. 1], at 1, 5). Plaintiff is sixty-nine years old and purportedly in

---

[1] Defendants have clarified that this is the correct spelling of Robin Roatch's name. (Mem. in Opp'n [Docket No. 8], at 1).

[2] Unless indicated otherwise, the facts in this section come from the allegations within Plaintiff's Complaint, [Docket No. 1], or the documents attached to Plaintiff's Complaint, [Docket No. 1-1].

excellent health with no issues. (Id. at 5). For eleven years, "Plaintiff has been a punctual and reliable employee for Grand Casino." (Id.).

On July 22, 2019, Plaintiff was scheduled to work at Grand Casino at 3:00 p.m., however, he was late due to an apparent mechanical problem with his motorcycle. (Id. at 4–5; Compl. Suppl. [Docket No. 1-1], at 1). Plaintiff did not have access to a phone. (Compl. [Docket No. 1], at 5). Within one hour of Plaintiff's failure to appear for his scheduled start time at work, Defendant, Nickolas Eberheart, a Security Manager at Grand Casino, called Plaintiff's residence and left a message on the answering machine inquiring into why Plaintiff was not at work. (Compl. Suppl. [Docket No. 1-1], at 1). Shortly thereafter, Defendant, Ryan Manley, a Swingshift Security Manager at Grand Casino, called the Pine County Sherriff's Department. (Id.).

At 4:36 p.m. on July 22, 2019, Defendants, Deputy Jesse Kenow and Deputy Troy Griffith (together, the "Deputy Defendants"), were dispatched to Plaintiff's residence for a "welfare check." (Case Report [Docket No. 1-1], at 3).[3] The Deputy Defendants were informed that Grand Casino Security had reported that Plaintiff had been working at Grand Casino for nine years, he did not show up for work, it was uncharacteristic for him to be over an hour and a half late, his vehicles were at his residence, and he was not answering his door. (Id.). The Deputy Defendants knocked on Plaintiff's door and identified themselves, but no one answered. (Id.). The Deputy Defendants had no known contacts for Plaintiff and his emergency contact that he used at work had recently passed away. (Id.). Plaintiff's door was locked, and so the Deputy Defendants forced entry using a crowbar. (Id.; Compl. Suppl. [Docket No. 1-1], at 1). Plaintiff was not inside his residence. (Id.). The Deputy Defendants secured Plaintiff's door with screws and left a short note

---

[3] The Case Report is attached to Plaintiff's Complaint and therefore is properly considered in resolving this matter. See, e.g., Saterdalen, 725 F.3d at 841.

2

for Plaintiff explaining the damage to his door as well as a business card so that Plaintiff could contact them when he returned. (Id.).

Plaintiff returned home around 6:00 p.m., he observed that there had been a forced entry into his residence, and he discovered the note and business card left by the Deputy Defendants. (Compl. [Docket No. 1], at 5). Defendant, Robin Roatch, Head of Grand Casino Security, had also recently arrived at his residence looking for him, parked her car in his driveway, and expressed concern for Plaintiff. (Id.; Comp. Suppl. [Docket No. 1-1], at 2).

On October 21, 2019, Plaintiff initiated the present case by filing his pro se Complaint in this Court. (Compl. [Docket No. 1]). Plaintiff alleges that the welfare check violated his rights under the Fourth Amendment, and he asserts claims against Defendants under 42 U.S.C. § 1983 and § 1986.[4] (Id.).

Now before the Court are the Grand Casino Defendants' Motion to Dismiss, [Docket No. 6], filed on November 19, 2019, and the Deputy Defendants' Motion to Dismiss, [Docket No. 15], filed on December 4, 2019. The Motions to Dismiss were referred for Report and Recommendation. [Docket No. 5].

## II.   GRAND CASINO DEFENDANTS' MOTION TO DISMISS [Docket No. 6]

On November 19, 2019, Defendants, Robin Roatch, Michael Engel, Nick Eberheart, and Ryan Manley (together, the "Casino Defendants"), filed their Motion to Dismiss. [Docket No. 6]. The Casino Defendants move to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, as well as, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Mot. to Dismiss [Docket No. 6]).

---

[4] Plaintiff also seeks an award of costs and attorney's fees under 42 U.S.C. § 1988. (Id.).

3

The Casino Defendants argue that that Plaintiff's claims against them are barred by sovereign immunity. (See, Mem. in Supp. [Docket No. 8], at 3–8). Specifically, the Casino Defendants argue that Plaintiff named them in their official capacities as employees of the Mille Lacs Band of Ojibwe, and therefore, they are entitled to sovereign immunity. (See, Id. at 5–8). Accordingly, the Casino Defendants contend that because sovereign immunity has not been waived, the claims asserted against them must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. (See, Id. at 8).

The Casino Defendants further argue in the alternative that even if Plaintiff's claims against them were not barred by sovereign immunity, "dismissal would be appropriate because he has failed to state a claim upon which relief can be granted under Rule 12(b)(6)." (Id. at 9–15).

### A. Standard of Review

"Federal Courts are courts of limited jurisdiction. 'The requirement that jurisdiction be established as a threshold matter "spring[s] from the nature and limits of the judicial power of the United States" and is "inflexible and without exception."'" Godfrey v. Pulitzer Pub. Co., 161 F.3d 1137, 1141 (8th Cir. 1998) (alteration in original) (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998)). "A court must dismiss an action over which it lacks subject matter jurisdiction." Pomerenke v. Bird, No. 12–cv–1757 (DSD/JJG), 2014 WL 30363, at *1 (D. Minn. Jan. 3, 2014) (citing Fed. R. Civ. P. 12(h)(3)). Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a pleading for lack of subject matter jurisdiction.

"Sovereign immunity is a jurisdictional question." Rupp v. Omaha Indian Tribe, 45 F.3d 1241, 1244 (8th Cir. 1995). If a Defendant enjoys sovereign immunity, the Court does not have jurisdiction to hear the claims plead against it. Id. Accordingly, motions to dismiss asserting

4

sovereign immunity challenges are considered pursuant to Federal Rule of Civil Procedure 12(b)(1). Brown v. United States, 151 F.3d 800, 804 (8th Cir. 1998).[5]

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erikcon v. Pardus, 551 U.S. 89, 94 (2007) (citation omitted). Nonetheless, "[a]lthough pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984); see also, Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980).

**B. Analysis**

The Casino Defendants argue as a threshold matter that the claims asserted against them in Plaintiff's Complaint are barred by sovereign immunity, and therefore, they should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. (See, Mem. in Supp. [Docket No. 8], at 3–8).

The U.S. Supreme Court has long observed that Indian tribes are "distinct, independent political communities, retaining their original natural rights in matters of local self-government." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 55 (1978) (internal quotation marks omitted). While "no longer possessed of the full attributes of sovereignty," tribes retain the right to make their own law regarding internal matters, and to enforce that law in their own forums. Id. at 55–56. Thus, "[a]s a matter of law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." Kiowa Tribe of Okla. v. Mfg. Techs., 523 U.S. 751, 753 (1998). In Santa Clara Pueblo, the U.S. Supreme Court reaffirmed its long-held view that, as it related to Indian tribes, "a waiver of sovereign immunity cannot be implied but must be

---

[5] Because the Court does not reach the Casino Defendants' alternative argument for dismissal under Rule 12(b)(6), it is not necessary for the court to set forth the applicable standard of review.

unequivocally expressed." 436 U.S. at 55. Absent a showing that an Indian tribe has waived its sovereign immunity or that the U.S. Congress has authorized the suit, the Federal Court lacks subject matter jurisdiction over claims against an Indian tribe or its agencies. Hagen v. Sisseton–Wahpeton Cmty. Coll., 205 F.3d 1040, 1043 (8th Cir. 2000) (providing that sovereign immunity is a threshold jurisdictional issue).

A tribe's sovereign immunity extends to its agencies. Id. at 1043–44 (sovereign immunity extends to tribal college); Dillon v. Yankton Sioux Tribe Hous. Auth., 144 F.3d 581, 583 (8th Cir. 1998) (sovereign immunity extends to tribal housing authority); Reuer v. Grand Casino Hinckley, No. 09-1798 (MJD/RLA), 2010 WL 3384993, at *8 (D. Minn. July 12, 2010), report and recommendation adopted by 2010 WL 3385058 (D. Minn. Aug. 24, 2010) (sovereign immunity extends to gaming enterprises). "An agency is entitled to sovereign immunity if it 'serve[s] as an arm of the sovereign tribes, acting as more than a mere business.'" Harper v. White Earth Human Res., No. 16-1797 (JRT/LIB), 2017 WL 701354, at *1 (D. Minn. Feb. 22, 2017) (quoting Hagen, 205 F.3d at 1043).

The District of Minnesota has recognized that the Mille Lacs Band of Ojibwe has sovereign immunity from suit. See, Reuer, 2010 WL 3384993, at *2, 9. The District of Minnesota has further recognized that sovereign immunity extends to Mille Lacs Corporate Ventures as an agency of the Mille Lacs Band of Ojibwe.[6] See, Id. at *2–3. Mille Lacs Corporate Ventures is "authorized to conduct gaming activities, and one of its activities is to conduct business as the Grand Casino Hinckley." Id. at *3. Therefore, any individual who works at Grand Casino is an employee of Mille Lacs Corporate Ventures and by extension of the Mille Lacs Band of Ojibwe. See, Id.

---

[6] Mille Lacs Corporate Ventures was formerly known as the Corporate Commission of the Mille Lacs Band of Chippewa Indians. (Ex. A [Docket No. 9-1]).

6

"A suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent." Stanko v. Oglala Sioux Tribe, 916 F.3d 694, 697 (8th Cir. 2019) (quoting McMillian v. Monroe Cty., 520 U.S. 781, 785 n.2 (1997)). The same is true in the context of tribal sovereign immunity. Id. (quoting Lewis v. Clark, 137 S. Ct. 1285, 1292 (2017)). "[L]awsuits brought against employees in their official capacity 'represent only another way of pleading an action against an entity of which an officer is an agent,' and they may . . . be barred by sovereign immunity." Lewis, 137 S. Ct. at 1290–91 (quoting Kentucky v. Graham, 473 U.S. 159, 165–66 (1985)); see also, Whiting v. Bear, No. 15-cv-03019-RAL, 2016 WL 297435, at *3 (D.S.D. Jan. 22, 2016) ("In a suit for damages, tribal immunity also protects tribal employees acting in their official capacities and within the scope of their authority, as relief would run directly against the tribe itself."). However, "in a suit brought against a tribal employee in his individual capacity, the employee, not the tribe, is the real party in interest and the tribe's sovereign immunity is not implicated." Id. at 1288. "In sum, although tribal sovereign immunity is implicated when the suit is brought against individual officers in their official capacities, it is simply not present when the claim is made against those employees in their individual capacities." Id. at 1294. Therefore, the determination of whether a tribal employee has been sued in his or her official or individual capacity is crucial to resolving whether claims alleged against the tribal employee are barred by sovereign immunity. See, e.g., Id.

"Public servants may be sued under section 1983 in either their official capacity, their individual capacity, or both." Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). In the Eighth Circuit, "[i]f the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity." Baker v. Chisom, 501 F.3d 920, 923 (8th Cir. 2007) (quoting Artis v. Francis Howell N. Band Booster Ass'n, Inc., 161

7

F.3d 1178, 1182 (8th Cir. 1998)); see also, Remington v. Hoopes, 611 Fed. App'x 883, 885 (8th Cir. 2015) ("Thus, when a plaintiff's complaint is silent or otherwise ambiguous about the capacity in which the plaintiff is suing the defendant, our precedent requires us to presume that the plaintiff brings suit against the defendants in only their official capacities."); Johnson, 172 F.3d at 535 ("Absent such an express statement, the suit is construed as being against the defendants in their official capacity."); Schmidt v. Fire Thunder, No. 05-5097-KES, 2006 WL 8444861, at *2 (D.S.D. May 31, 2006), aff'd, 272 Fed. App'x 536 (8th Cir. 2008) (applying rule to tribal officials).

Courts in this district have routinely applied this rule to pro se complaints. See, e.g., Kunshier v. Boder, No. 18-cv-3316 (ECT/TNL), 2019 WL 2360899, at *3 (D. Minn. May 13, 2019), report and recommendation adopted by 2019 WL 2357045 (D. Minn. June 4, 2019) (finding that where a pro se complaint did not specify that claims were alleged against the defendants in their individual capacities, the claims must be construed as being against the defendants in their official capacities only); Allen v. Reid, No. 15-cv-1905 (WMW/SER), 2017 WL 2963863, at *4 (D. Minn. Apr. 20, 2017), report and recommendation adopted by 2017 WL 2963375 (D. Minn. Jul. 11, 2017) (same); Daniels v. Jesson, No. 13-736 (JNE/SER), 2014 WL 3629874, at *5 (D. Minn. Jul. 22, 2014) (same).

Here, the caption of Plaintiff's pro se Complaint lists each Casino Employee by his or her individual name, but also specifies that they are "Grand Casino employees (Mille Lacs Band of Ojibwe)." (Compl. [Docket No. 1], at 2). In the body of the pro se Complaint, each Casino Employee is listed by his or her individual name, as well as, his or her specific management position with Grand Casino, and Grand Casino's business address is listed for each Casino Employee. (Id. at 2). Further, Defendants, Robin Roatch, Michael Engel, and Nickolas Eberheart, are specifically identified as "Grand Casino Administration." (Id.). In contrast, in the Supplement

8

attached to Plaintiff's pro se Complaint, Plaintiff specifies that his claims are being asserted against each of the Deputy Defendants "in his own individual capacity." (Compl. Suppl. [Docket No. 1-1], at 1). However, no such designation regarding individual capacity is made in relation to any of the Casino Employee Defendants. (Id.). Indeed, neither Plaintiff's Complaint nor its Supplement specify that any claim is being asserted against any Casino Employee in an individual capacity. (See, Compl. [Docket No. 1]; Compl. Suppl. [Docket No. 1-1]).

Therefore, the Court must construe Plaintiff's claims as being asserted against the Casino Employee Defendants in their official capacities only. See, Remington, 611 Fed. App'x at 885 (finding "'cryptic' allegations [we]re not sufficient to state an individual-capacity claim" where "the complaint's caption and content included only the name of each defendant and his official title"); see also, Baker, 501 F.3d at 923; Johnson, 172 F.3d at 535; Kunshier, 2019 WL 2360899, at *3; Allen, 2017 WL 2963863, at *4; Daniels, 2014 WL 3629874, at *5.

Consequently, as observed above, Plaintiff's claims alleged against the Casino Employees in their "official capacities" are the same as claims directly alleged against Mille Lacs Corporate Ventures, the Tribal agency conducting business as Grand Casino. See, Lewis, 137 S. Ct. at 1290–91; Stanko, 916 F.3d at 697; see also, Reuer, 2010 WL 3384993, at *3. As noted above, sovereign immunity extends to Mille Lacs Corporate Ventures as an agency of the Mille Lacs Band of Ojibwe. See, Reuer, 2010 WL 3384993, at *2–3, 9. Consequently, Plaintiff's claims alleged against the Casino Defendants are barred by sovereign immunity unless "Congress has authorized the suit or the tribe has waived its immunity." See, Kiowa, 523 U.S. at 753. No such congressional authorization or tribal waiver exists here.

"It is well settled that the plaintiff bears the burden of establishing subject matter jurisdiction." Nucor Corp. v. Nebraska Public Power Dist., 891 F.2d 1343, 1346 (8th Cir. 1989).

9

In the present case, even liberally construing Plaintiff's pro se Complaint and drawing all reasonable inferences thereon, Plaintiff has not raised <u>any</u> argument nor alleged <u>any</u> facts demonstrating that the Mille Lacs Band of Ojibwe unequivocally expressed a waiver of sovereign immunity.[7] Nor has Plaintiff demonstrated that Congress abrogated the Mille Lacs Band of Ojibwe's sovereign immunity for the purposes of the claims now before this Court. (<u>See</u>, Compl. [Docket 1]; Compl. Suppl. [Docket No. 1-1]; Reply [Docket No. 26]). Thus, on the present record, the Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims.[8]

Therefore, the Court recommends that Defendants, Robin Roatch, Michael Engel, Nickolas Eberheart, and Ryan Manley's, Motion to Dismiss, [Docket No. 6], be **GRANTED**, and that Plaintiff's Complaint, [Docket No. 1], insofar as it asserts claims against any of the Casino Defendants be **DISMISSED without prejudice**.[9]

### III. DEPUTY DEFENDANTS' MOTION TO DISMISS [Docket No. 15]

On December 4, 2019, the Deputy Defendants, Jesse Kenow and Troy Griffith, filed their Motion to Dismiss. [Docket No. 15]. The Deputy Defendants move to dismiss Plaintiff's Complaint in its entirety with prejudice under Federal Rule of Civil Procedure 12(c) for failure to state a claim upon which relief can be granted. (Mot. to Dismiss [Docket No. 15]).

---

[7] Plaintiff observes that the welfare check occurred at his residence, which is located outside the reservation, however, the critical inquiry is not the location of the conduct but whether sovereign immunity has been waived. <u>See, e.g.</u>, <u>Reuer</u>, 2010 WL 3384993, at *9 & n.10 (quoting <u>Kiowa</u>, 523 U.S. at 760) ("[E]ven if some of [Mille Lacs Corporate Ventures's] employees work off of the lands held in trust by the United States—that is, work in other sites than the casino, where the Plaintiffs worked—the Supreme Court has held that 'offreservation commercial conduct' by an Indian Tribe does not strip the Tribe of its sovereign immunity from suit for, '[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity.'").

[8] Because the Court finds that dismissal is required for lack of subject matter jurisdiction, it is not necessary for the Court to address the Casino Defendants' alternative 12(b)(6) argument.

[9] The Court is cognizant of the fact that, under the majority of circumstances, claims dismissed based on the doctrine of sovereign immunity are dismissed with prejudice. <u>See</u>, <u>Harper v. White Earth Human Res.</u>, No. 16-cv-1797 (JRT/LIB), 2017 WL 701354, at *2 (D. Minn. Feb. 22, 2017). The Court finds, however, that the circumstances of the present case warrant dismissal without prejudice. <u>See, e.g.</u>, <u>Allen</u>, 2017 WL 2963863.

The Deputy Defendants argue that they are entitled to dismissal under Rule 12(c) because: (1) the claims alleged against them are barred by qualified immunity; (2) Plaintiff has not alleged facts sufficient to demonstrate a constitutional violation; and (3) the force used and resulting injury to Plaintiff was "so de minimus as to be insufficient to bring a constitutional claim as a matter of law."[10] (Mem. in Supp. [Docket No. 17], at 1).

### A. Standard of Review

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law . . . ." Ashley Cty, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009) (quotations and citations omitted). A motion for judgment on the pleadings pursuant to Rule 12(c) is reviewed under the same standard as a motion to dismiss pursuant to Rule 12(b)(6). Clemons v. Crawford, 585 F.3d 1119, 1124 (8th Cir. 2009); see also, Haney v. Portfolio Recovery Assocs., L.L.C., 895 F.3d 974, 981 (8th Cir. 2016) ("We review a 12(c) motion under the standard that governs 12(b)(6) motions." (quotations omitted)). The distinction between a motion pursuant to Rule 12(c) and motion pursuant to 12(b)(6) is "purely formal." Hubbell v. Am. Accounts & Advisors, Inc., 13-cv-1157 (MJD/AJB), 2013 WL 5944264, *2 (D. Minn. Nov. 5, 2013).

"A Rule 12(c) motion may assert the defense of failure to state a claim upon which relief can be granted." Staples v. Halvorson, No. 18-3449 (DSD/BRT), 2019 WL 7833828, at *1 (D. Minn. Dec. 18, 2019), report and recommendation adopted by 2020 WL 528897 ( D. Minn. Feb. 3, 2020) (citing Fed. R. Civ. P. 12(h)(2)); see also, Wescott v. City of Omaha, 901 F.2d 1486, 1488

---

[10] In their Reply, the Deputy Defendants also argue that Plaintiff failed to oppose their motion to dismiss. (Reply [Docket No. 26], at 1–3). However, the Court construes Plaintiff's Response, (Mem. in Opp'n [Docket No. 22]), to oppose both of the present motions to dismiss.

11

(8th Cir. 1990) ("Rule 12(h)(2) provides that "[a] defense of failure to state a claim upon which relief can be granted" may be advanced in a motion for judgment on the pleadings under Rule 12(c) . . . .").

In reviewing a motion for judgment on the pleadings, the Court considers all facts alleged in the complaint as true to determine if the complaint states a claim for "relief that is plausible on its face." Branden v. Wal-Mart Store, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The Court construes the complaint in the light most favorable to the non-movant, drawing all inferences in his favor. Saterdalen v. Spencer, 725 F.3d 838, 841 (8th Cir. 2013); Ashley Cty., Ark., 552 F.3d at 665 (8th Cir. 2009). "While courts generally may not consider materials outside the pleadings in deciding whether to grant a motion for judgment on the pleadings, courts may consider 'some public records, materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings.'" Saterdalen, 725 F.3d at 841 (quoting Noble Sys. Corp. v. Alorica Cent., LLC, 543 F.3d 978, 982 (8th Cir. 2008)).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary, the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

The non-moving party's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quotations and citations omitted). "A claim has facial plausibility when the [party] pleads factual content that allows the court to draw the reasonable inference that the [alleged party] is liable for the misconduct alleged," but in contrast,

12

where a complaint or counter claims "pleads facts that are 'merely consistent with' a [party's] liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556–67). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 664.

As set forth above, a pro se complaint "is to be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erikcon, 551 U.S. at 94. However, "pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d at 528; see also, Martin, 623 F.2d at 1286.

Additionally, "[t]hough pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (citations omitted); see also, Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989) (regarding a pro se plaintiff, "we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded"); Cunningham v. Ray, 648 F.2d 1185, 1186 (8th Cir. 1981) ("[P]ro se litigants must set [a claim] forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law.").

### B. Analysis

The Deputy Defendants first argue that the claims asserted against them in Plaintiff's Complaint are barred by qualified immunity, and therefore, they should be dismissed under Rule 12(c) for failure to state a claim upon which relief can be granted. (See, Mem. in Supp. [Docket No. 17], at 1, 4–6).

"Under the qualified immunity doctrine, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Burke v. Sullivan, 677 F.3d 367, 370–71 (8th Cir. 2012) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Qualified immunity only shields individuals sued in their individual capacity and is not a defense for individuals sued in their official capacity." Parada v. Anoka Cty., 332 F. Supp. 3d 1229, 1238–39 (D. Minn. 2018). "Whether an official may be held personally liable for an official act 'generally turns on the "objective legal reasonableness" of the [official's] action, assessed in light of the legal rules that were "clearly established" at the time it was taken.'" Kiesling v. Holladay, 859 F.3d 529, 533 (8th Cir. 2017) (alteration in original) (quoting Saterdalen v. Spencer, 725 F.3d 838, 841 (8th Cir. 2013)).

"Judgement on the pleadings under Rule 12(c) is appropriate if Defendants are entitled to qualified immunity on the face of the complaint." Hockbein v. Pine Cty., No. 17-5224 (DWF/LIB), 2019 WL 135697, at *3 (D. Minn. Jan. 8, 2019) (quotations omitted); accord, Montin v. Moore, 846 F.3d 289, 293 (8th Cir. 2017). Defendants "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." See, Lane v. Nading, 927 F.3d 1018, 1022 (8th Cir. 2019) (quoting District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018)). "To be 'clearly established,' the law must be 'sufficiently clear that every reasonable official would understand what he is doing is unlawful.'" Id. (quoting Wesby, 138 S. Ct. at 589). "[P]recedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." Id. (alteration in original) (quoting Wesby, 138 S. Ct. at 590).

Here, Plaintiff specifically names the Deputy Defendants in their individual capacities. (See, Compl. Suppl. [Docket No. 1-1], at 1). Plaintiff alleges that the Deputy Defendants violated

14

his rights under the Fourth Amendment, and he asserts claims against them under 42 U.S.C. § 1983 and § 1986. (See, Compl. [Docket No. 1], at 4).

The Fourth Amendment provides protection "against unreasonable searches and seizures." U.S. Const. amend IV. "While it is a basic principle of the Fourth Amendment that warrantless searches and seizures inside a home are presumptively unreasonable, the ultimate touchstone of the Fourth Amendment is 'reasonableness,' and it follows that the warrant requirement is subject to certain exceptions." U.S. v. Smith, 820 F.3d 356, 360 (8th Cir. 2016); accord, Burke, 677 F.3d at 371. "One such exception applies when police officers engage in a community caretaking function." Smith, 820 F.3d at 360; see also, Birkeland as trustee for Birkeland v. Jorgenson, No. 17-1149 (DWF/LIB), 2019 WL 1936736, at *5 (D. Minn. May 1, 2019), appeal docketed (quoting United States v. Harris, 747 F.3d 1013, 1017 (8th Cir. 2014)) ("The Eighth Circuit has recognized that a 'community caretaking' classification may justify non-investigatory searches and seizures in certain, limited situations.").

"The community caretaking function allows police officers to enter a residence without a warrant 'where the officer has a reasonable belief that an emergency exists requiring his or her attention.'" Birkeland, 2019 WL 1936736, at *5 (quoting United States v. Quezada, 448 F.3d 1005, 1007 (8th Cir. 2006)); accord, Burke, 677 F.3d at 371. "The 'reasonable belief' required under the community caretaker doctrine 'is a less exacting standard than probable cause.'" Smith, 820 F.3d at 360 (quoting Quezada, 448 F.3d at 1007); accord, Burke, 677 F.3d at 371. The community caretaking exception has been applied in the context of welfare checks conducted by police officers. See, e.g., Graham v. Barnette, No. 17-cv-2920 (JNE/SER), 2018 WL 6592666, at *5 (D. Minn. Dec. 14, 2018) ("[T]he Court finds that the community caretaking standard is appropriate since the officers entered the home on a welfare check.").

Here, the Deputy Defendants were dispatched to Plaintiff's residence specifically upon a request by Plaintiff's employer for a welfare check. (Case Report [Docket No. 1-1], at 3). They were informed that Grand Casino Security reported that Plaintiff, an elderly employee of Grand Casino, had not shown up for work. (Id.). They were further informed that it was uncharacteristic for Plaintiff to be over an hour and a half late to work, Plaintiff's automobiles were observed still at his residence, Plaintiff was not answering his door, and Plaintiff's emergency contact that he used at work had recently passed away. (Id.). Deputy Defendant Kenow in arriving at Plaintiff's residence under the foregoing circumstances identified himself loudly and clearly multiple times while simultaneously knocking loudly on the door. (Id.). No one answered. (Id.). Plaintiff's door was locked; so, consequently, the Deputy Defendants forced entry into the home using a crowbar. (Id.). After the Deputy Defendants discovered that Plaintiff was not inside his residence, they exited and secured the residence. (Id.).

Plaintiff has not raised any factual allegations that dispute this narrative. (See, Compl. [Docket No. 1]; Compl. Suppl. [Docket No. 1-1]). Rather, Plaintiff asserts that the wellness check and forced entry by the Deputy Defendants were unwarranted because he has no health issues, and Grand Casino never informed him that it would call the Sherriff's department to break into his residence if he were ever late for work. (See, Compl. [Docket No. 1], at 5; Compl. Suppl. [Docket No. 1-1], at 1–2; see also, Mem. in Opp'n [Docket No. 22]).

Given the facts and circumstances as alleged, the Court finds that the Deputy Defendants had an objectively reasonable belief that an emergency existed in Plaintiff's residence which required their assistance. Considering Plaintiff's age, that he had been reported by his employer to have uncharacteristically not shown up to work without any explanation, that his automobiles were still observed at his residence, and that there was no answer at his door despite the Deputy

16

Defendants loudly knocking and identifying themselves, "a reasonable officer in the [Deputy Defendants'] position could conclude that someone was inside but was unable to respond for some reason." See, Quezada, 448 F.3d at 1008. That Plaintiff had no prior known health issues does not undermine the objective reasonableness of such a conclusion. Nor does the fact that Plaintiff had never been informed by his employer that a welfare check would be sought if he was ever late for work.

"Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Graham, 2018 WL 6592666, at *6 (quoting Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004)). Even in liberally construing Plaintiff's pro se Complaint, the allegations as asserted fail to plausibly demonstrate that the Deputy Defendants violated Plaintiff's clearly established Fourth Amendment rights. Therefore, Defendants are entitled to qualified immunity on the face of the Complaint.[11] See, Lane, 927 F.3d at 1022–23; see also, Kiesling, 859 F.3d at 529; Burke, 677 F.3d at 370–71; Quezada, 448 F.3d at 1008; Birkeland, 2019 WL 1936736, at *4–6; Graham, 2018 WL 6592666, at *4–6.

As stated above, the Court finds, based on the facts as alleged in Plaintiff's Complaint, that the Deputy Defendants are entitled to qualified immunity. Therefore, the Court recommends that Plaintiff's Complaint, [Docket No. 1], be dismissed insofar as it asserts claims against the Deputy Defendants. However, the issue still remains as to whether that dismissal should be with or without prejudice.

The Deputy Defendants seek dismissal with prejudice. (Defendants Troy Griffith and Jesse Kenow's Motion to Dismiss [Docket No. 15]). For the following reasons, the Court recommends that the dismissal be without prejudice.

---

[11] Because the Court finds that dismissal is warranted on qualified immunity grounds, it is not necessary for the Court to address the Deputy Defendants' alternative arguments.

"[T]he Eighth Circuit and this Court generally favor dismissals under Rule 12(b)(6) without prejudice, at least where there is no evidence of persistent pleading failures." Oberg v. Shapiro, No. 15-cv-3678 (PJS/SER), 2016 WL 4501354, at *12 (D. Minn. Aug. 1, 2016), report and recommendation adopted by 2016 WL 4497754 (D. Minn. Aug. 26, 2016) (quoting Holmseth v. E. Grand Forks, No. 14-2970 (DWF/LIB), 2015 WL 4488424, at *20 (D. Minn. July 23, 2015)). As noted above, the distinction between a motion pursuant to Rule 12(c) and motion pursuant to 12(b)(6) is "purely formal." Hubbell v. Am. Accounts & Advisors, Inc., 13-cv-1157 (MJD/AJB), 2013 WL 5944264, *2 (D. Minn. Nov. 5, 2013). Accordingly, Courts in this District have dismissed claims without prejudice under Rule 12(c) where a plaintiff has failed to plead sufficient facts to state a claim upon which relief can be granted. See, Kludt v. Aitkin Cty. MN, No. 17-4774 (JRT/FLN), 2018 WL 4443168 (D. Minn. Apr. 23, 2018), report and recommendation adopted by 2018 WL 3814520 (D. Minn. Aug. 10, 2018) (dismissing without prejudice under Rule 12(c)); Green v. Midland Loan Servs., 18-cv-961 (PJS/LIB), 2018 WL 4559094 (D. Minn. Sept. 5, 2018), report and recommendation adopted by 2018 WL 4539700 (D. Minn. Sept. 21, 2018) (dismissing without prejudice under Rule 12(c)).

Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate. See, McLean v. United States, 566 F.3d 391, 400 (4th Cir. 2009); see also, McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment").

Here, Plaintiff has failed to allege facts in his pro se Complaint that plausibly demonstrate that the Deputy Defendants violated a clearly established constitutional or statutory right. (See,

18

Compl. [Docket No. 1]). Consequently, the Deputy Defendants have challenged Plaintiff's Complaint on grounds that it fails to state a claim upon which relief can be granted. (See, Defendants Troy Griffith and Jesse Kenow's Motion to Dismiss, [Docket No. 15]). Although Plaintiff's allegations are insufficient as pleaded, the Court cannot conclude that it is "truly unable to conceive of any set of facts under which [Plaintiff] would be entitled to relief." See, McLean, 566 F.3d at 400.

A pro se litigant should be given chance to pursue his claims unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995). As the Court does not hold that the defects in Plaintiff's Complaint cannot be cured by re-pleading, the Court recommends that Plaintiff's claims as alleged against the Deputy Defendants be dismissed without prejudice.[12] See, Parada v. Anoka Cty., 332 F. Supp. 3d 1229 (D. Minn. 2018) (dismissing without prejudice under Rule 12(b)(6) where based on the factual allegations the defendant officer was entitled to qualified immunity against alleged § 1983 claims)).

Therefore, the Court recommends that Deputy Defendants, Troy Griffith and Jesse Kenow's, Motion to Dismiss, [Docket No. 15], be **GRANTED in part** and **DENIED in part**. And that Plaintiff's Complaint, [Docket No. 1], insofar as it asserts claims against any of the Deputy Defendants be **dismissed without prejudice**.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED THAT:**

---

[12] The Deputy Defendants also seek and Order awarding "their reasonable costs and disbursements in their entirety and to be determined." (Defendants Troy Griffith and Jesse Kenow's Motion to Dismiss [Docket No. 15]). The Court recommends this request be denied.

1. Defendants, Robin Roatch, Michael Engel, Nickolas Eberheart, and Ryan Manley's, Motion to Dismiss, [Docket No. 6], be **GRANTED**;

2. Defendants, Troy Griffith and Jesse Kenow's, Motion to Dismiss, [Docket No. 15], be **GRANTED in part** and **DENIED in part** as set forth above; and

3. Plaintiff's Complaint, [Docket No. 1], in its entirety, be **DISMISSED without prejudice**.

Date: April 1, 2020                                  s/Leo I. Brisbois
                                                     Leo I. Brisbois
                                                     U.S. MAGISTRATE JUDGE

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).